McKee *et al. v.* Gould *et al.*

*B. P. Douglass* and *S. M. Stockslager,* for appellant.
*W. N. Tracewell* and *R. J. Tracewell,* for appellees.

Filed Oct. 27, 1886.

----------◆----------

No. 12,187.

McKEE ET AL. *v.* GOULD ET AL.

HIGHWAY.—*Report of Viewers Against Utility.*—*No Appeal from Order Confirming.*—An appeal will not lie to the circuit court from an order of the board of county commissioners confirming the report of the first viewers that a proposed highway will not be of public utility.

SAME.—*Remedy.*—*Second Petition.*—The remedy of the petitioners when an adverse report is made upon the subject of the utility of a highway is to file a bond for costs and petition over.

From the Clinton Circuit Court.

*W. R. Moore, T. H. Palmer* and *W. F. Palmer,* for appellants.
*J. V. Kent, O. E. Brumbaugh* and *J. W. Merritt,* for appellees.

MITCHELL, J.—At the September session, 1883, John Gould, and eighteen others, petitioned the board of commis-

sioners of Clinton county, for the location of a highway on a route which is described in the petition. Viewers were duly appointed, who, at a subsequent session of the board, returned their warrant of appointment, with the report that they had executed the mandate contained in the warrant, and had found the proposed highway therein described not to be of public utility.

Thereupon the board accepted and confirmed the report, adjudged that the highway would not be of public utility, and taxed the costs against the petitioners. An appeal bond was then filed, in which it is recited that the persons signing the bond had appealed to the Clinton Circuit Court, from an order of the board of commissioners, refusing to grant their petition for a highway. The bond was signed by John Gould, Foster Hind, Joseph B. McKee, "Surety," John W. Jacobs and James Stinson. The proceedings were thereupon certified by the county auditor to the Clinton Circuit Court.

On the commissioners' record the proceedings were entitled, "In matter of the petition for a public highway, by John Gould et al." Upon being removed to the circuit court the case was docketed, "John Gould, Foster Hind et al. *v.* Joseph B. McKee, Mary A. Smoot et al." Substantially under that title the case was continued through several terms until it was finally disposed of in the court below.

When, or in what manner, or for what purpose, Joseph B. McKee and Mary A. Smoot, or any one else, except the petitioners, became parties to the proceeding, the record does not disclose. McKee signed the appeal bond adding "surety" after his name, while the name "Mary A. Smoot" appears among those petitioning for the location of the highway.

The first record entry in the circuit court recites that the defendants moved the court to dismiss the appeal, alleging, among other grounds, that the court had no jurisdiction over the subject-matter. This motion was overruled. Thereupon, without any pleading, remonstrance, or other issue, except such as may have arisen upon the proceedings heretofore re-

cited before the board of commissioners, a jury was empan-
elled and sworn to try the issues joined.    Testimony was
therefore taken covering six hundred pages upon the subject
of the utility and inutility of the proposed highway.    After
argument of counsel and instructions from the court, the
jury returned that the proposed highway would be of public
utility.

Over a motion for a new trial, judgment was entered that
the highway, as described in the petition, would be of public
utility, and an order was made remanding the proceedings
back and requiring the board of commissioners to carry out
the finding of the jury and the judgment of the court thereon.

The defendants moved the court to modify its order, by
directing particularly and specifically what course should be
pursued by the commissioners when the matter should be cer-
tified back to them.    This motion was overruled.

The question is now presented, whether in case the viewers
appointed in a proceeding for the location of a highway re-
port that the proposed highway would not be of public
utility, and refuse to lay out and mark the same as provided
in section 5016, R. S. 1881, the location of the highway may
nevertheless be coerced by an appeal to the circuit court from
the order of the board confirming the report of the viewers.

Under section 5015, upon the presentation of a proper pe-
tition signed by the requisite number of freeholders, and
proof of due notice thereof, it becomes the duty of the board
to appoint three persons to view the proposed highway.    The
commissioners have no discretion.    Having ascertained that
the petition is in due form and properly signed, and that the
prescribed notice has been given, it becomes their duty to
appoint viewers.  The viewers appointed and notified, having
taken an oath as the statute provides, are required to pro-
ceed to view the highway, and if they shall deem it to be of
public utility, it is their duty to lay out and mark the same
on the best ground, not running through any person's en-
closure of one year's standing without his consent, unless

upon examination, a good way can not otherwise be had. At the next ensuing session of the board, the viewers or a majority of them are required to make a report of their proceedings, giving a full description of the highway as located by metes and bounds. Section 5017. If no objection be made, the board shall cause a record of the highway to be made, and order the same to be opened and kept in repair.

Sections 5019, 5020 and 5021 provide for remonstrances by aggrieved persons through whose lands the proposed highway may pass, and for the appointment of reviewers to assess, and for the assessment and payment of damages, out of the county treasury, provided the board shall consider the high-way of sufficient importance to the public to justify them in ordering such payment to be made.

Section 5023 enacts that any freeholder of the county may, at any time before final action by the board, object that the highway is not of public utility. Other viewers are then to be appointed, who are required to examine the proposed highway, and report whether or not in their opinion it will be of public utility. If a majority of these last named viewers report against the public utility of the highway, section 5024 provides that "the same shall not be established."

From this brief summary of the law regulating proceedings for the location of a highway, it will be seen that no provision whatever is made for any objection, remonstrance or contest, in case the first viewers report against the public utility of a proposed highway.

The statute seems to contemplate, that after the appointment of the first viewers, a report from them in favor of the public utility of the highway, and that they have laid out and marked the same as provided in section 5017, is a condition precedent to any further proceedings in the location of a highway. If the report of the first viewers is unfavorable, the statute contains no intimation that anything further may be done, except that section 5026 provides that when viewers shall have reported against the public utility of a proposed

highway, no second or subsequent petition shall be acted upon by the board unless the petitioners shall first file a bond conditioned for the payment of all costs, in case other viewers to be appointed shall make like report. The inference which we draw is, that the only remedy petitioners may resort to when an adverse report is made upon the subject of the utility of a highway petitioned for, is to file their bond for costs and petition over again. That they may not appeal to the circuit court, and ask that tribunal to coerce the location of a highway, over the report of viewers against its public utility, seems to result from several considerations:

1. Up to the point where the first viewers report adversely,. and until a remonstrance or objection is presented, the proceedings before the board are *ex parte.* Persons may appear and object to the petition, the sufficiency of the notice, the competency of the viewers, and the like, but, as was said in *Green* v. *Elliott,* 86 Ind. 53, " There are no adversary proceedings and no issues, until some one has appeared and made them."

The settled rule is that nothing can be tried on appeal from the board of commissioners to the circuit court, except such matters as were in issue before the board. *Forsythe* v. *Kreuter,* 100 Ind. 27 ; *Green* v. *Elliott, supra; Schmied* v. *Keeney,* 72. Ind. 309.

If, as in this case, no one has appeared and presented any objection before the board, the proceeding upon appeal to the circuit court is of necessity *ex parte,* without issue or adverse parties. The petitioners could not make it otherwise by the form in which they caused the proceeding to be docketed in the circuit court. The record disclosed that there was nothing before the court to try, and the proceeding should have been summarily dismissed.

2. Where viewers, as in the case we are considering, have reported against the public utility of a highway, and the board of commissioners have, as they were required to do, confirmed the report and proceeded no further, an appeal and

trial in the circuit court would be manifestly fruitless. The only persons under the law, authorized to lay out and describe the location of a proposed highway, are the viewers to be appointed by the board of commissioners. If the first viewers do not do this, no subsequent viewers or other body have the power. The law commits this to the viewers so appointed, and to no one else. *Hughes* v. *Sellers,* 34 Ind. 337; *Suits* v. *Murdock,* 63 Ind. 73.

Until this is done it is not within the power of the board of commissioners or the circuit court to adjudge that a highway be opened and established. *Hughes* v. *Sellers, supra.* These viewers can only be required to lay out and mark the proposed highway, in the event they deem it of public utility. Any viewers whom the board of commissioners might appoint, in obedience to the command of the circuit court, must act on their own judgment, and would not be bound by the finding and judgment of the court in respect to the public utility of the highway. Besides, even if the first viewers should, in obedience to the finding and judgment of the court, report in favor of the public utility of the highway and lay it out, any freeholder of the county has the right, at any time before final action of the board, to come in under section 5023 and object to the public utility of the road. Other viewers must then be appointed. If a majority of these report against its public utility, the statute is mandatory that "the same shall not be established."

The statutes indicate the legislative policy plainly enough. A public highway can not be located and established in any case by petition and notice, without first securing a report favorable to its utility, and having it laid out by viewers duly appointed in that behalf. Since the circuit court had before it, in this case, nothing in the nature of an issue raised before the board to try, and no adverse parties, the record presented no subject-matter over which it acquired jurisdiction. Moreover, as the only persons or tribunal authorized by the statute to determine in the first instance, whether or

not the proposed highway was of public utility, had decided against its utility, and declined on that account to lay it out, both the board of commissioners and the circuit court were thereafter powerless to locate and establish a highway on that route, until another petition should have been presented to the board, and a report of viewers favorable to such location had been secured.

It must be held, therefore, that until highway proceedings have progressed so far as that a final order or decision is made by the board of commissioners, after a report of viewers has been received, which determines that the proposed road is of public utility, and in which the road is laid out and described, no appeal will lie. *Freshour* v. *Logansport, etc., T. P. Co.,* 104 Ind. 463. This conclusion leads to the reversal of the judgment.

Judgment reversed, with costs.

